UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY S. DENNISON,

                           Plaintiff,

                v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                        Defendant.
_____

**DECISION
and
ORDER**

**17-CV-1059F**
(**consent**)

APPEARANCES:         OSTERHOUT DISABILITY LAW, LLC
                        KARL E. OSTERHOUT, of Counsel
                        Attorneys for Plaintiff
                        521 Cedar Way, Suite 200
                        Oakmont, Pennsylvania 15139

                        JAMES P. KENNEDY, JR.
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York  14202
                            and
                        DAVID L. BROWN,
                        Special Assistant United States Attorney, of Counsel
                        Social Security Administration
                        Office of General Counsel
                        26 Federal Plaza, Room 3904
                        New York, New York  10278
                            and
                        DENNIS J. CANNING, and
                        MEGHAN JANE McEVOY
                        Special Assistant United States Attorneys, of Counsel
                        Social Security Administration
                        Office of General Counsel
                        601 East 12th Street, Room 965
                        Kansas City, Missouri  64106

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 23, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 11). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 21, 2018 (Dkt. 11), and by Defendant on August 20, 2018 (Dkt. 17).

## BACKGROUND

Plaintiff Timothy S. Dennison ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on February 3, 2016, for Disability Insurance Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"). Plaintiff alleges he became disabled on September 10, 2015, based on ankylosing spondylitis, Crohn's disease, traumatic brain injury ("TBI"), depression, anxiety, and stroke. AR[2] at 1317. Plaintiff's applications were denied on May 16, 2016, AR at 95 (SSDI), and 110 (SSI), and at Plaintiff's timely request, on January 26, 2017, a hearing ("the administrative hearing"), was held in Jamestown, New York, by video conferencing before administrative law judge Sharon Seeley ("the ALJ"), located in Buffalo, New York. AR at 32-68. Appearing and testifying at the hearing were Plaintiff, with legal counsel Kelly Drago, Esq., and vocational expert Jean Bechler ("the VE"). In a post-hearing memorandum dated

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on March 20, 2018 (Dkt. 9).

February 2, 2017, Plaintiff objected to the VE's testimony given at the administrative hearing and requested a supplemental hearing. AR at 383-418.

On May 30, 2017, the ALJ issued a decision denying Plaintiff's post-hearing request for a supplemental hearing, and denying Plaintiff's claim, AR at 8-31 ("the ALJ's decision"), which Plaintiff, on July 21, 2017, appealed to the Appeals Council. AR at 187-89. On August 30, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-5. On October 20, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On May 21, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 11) ("Plaintiff's Motion"), and Plaintiff's Brief in Support of Motion for Summary Judgment (Dkt. 12) ("Plaintiff's Memorandum"), attaching Movant's Statement (Dkt. 12-1). On August 20, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 17) ("Defendant's Motion"), attaching Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to the Local Standing Order on Social Security Cases (Dkt. 17-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on September 10, 2018, Plaintiff's Reply Brief (Dkt. 18) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

# **FACTS**[3]

Plaintiff Timothy S. Dennison ("Plaintiff" or "Dennison"), born August 31, 1963, 1967, was 52 years old as of September 10, 2015, his alleged disability onset date ("DOD"). AR at 312. Plaintiff attended college, AR at 317, has a computer science degree, AR at 42, and has past work experience as a data base assistant, director of engineering, a manager, and a pharmacy technician. AR at 318. Plaintiff lives alone and has a driver's license but no vehicle. AR at 42. In 2011, Plaintiff, while working as a civilian contractor in Iraq, was involved in an explosion and shock wave resulting in traumatic brain injury ("TBI"), secondary to which, in July 2011, Plaintiff suffered a cerebral vascular accident and developed seizures until 2012. AR at 645. It is undisputed that Plaintiff suffers from the severe impairments of TBI, history of cerebral vascular accident possibly a stroke, Crohn's disease, adjustment disorder with mixed anxiety and depressed mood, degenerative changes, and osteoarthritis of the lumbar spine and sacroiliac joints, with Plaintiff also maintaining he suffers from ankylosing spondylitis. AR at 316.

# **DISCUSSION**

## **1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## 2. Disability Determination

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps,

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

---

[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through December 31, 2017, AR at 13, Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of September 10, 2015, *id.*, that Plaintiff suffers from the severe impairments of TBI, history of cerebral vascular accident, Crohn's disease, adjustment disorder with mixed anxiety and depressed mood, and degenerative disease and osteoarthritis of the lumbar spine and sacroiliac joints, *id.*, but that Plaintiff's other medically determinable impairments including hearing loss, chronic laryngitis, and deviated septum do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 13-14, the medical evidence does not support that Plaintiff has ankylosing spondylitis, *id.* at 14, Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 14-16, and that Plaintiff retains the RFC to perform light work limited to occasionally balancing, stooping, kneeling, crouching, and crawling, occasionally climbing ramps or stairs but never ladders, ropes, or scaffolds, and occasionally fingering with the bilateral upper extremities, can understand, remember, and carry out simple, routine instructions and tasks, maintain attention and concentration sufficient for such tasks with customary work breaks, and make simple, routine work-related decisions commensurate with such

tasks. *Id.* at 16-20. The ALJ found Plaintiff unable to perform any past relevant work, *id.* at 20-21, yet given Plaintiff's age, education, work experience and RFC, jobs exist in significant number in the national economy that Plaintiff can perform, including gate guard, usher, and locker room attendant, all jobs which the ALJ considered unskilled, such that Plaintiff is not disabled as defined under the Act. *Id.* at 21-24.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues the ALJ erred at step 4 in assessing Plaintiff's subjective complaints and evaluating medical evidence in arriving at Plaintiff's RFC, Memorandum at 12-20, and that the ALJ erred at step 5 by failing to address Plaintiff's objections to the VE's testimony that relied on the Dictionary of Occupational Titles ("DOT"), described by Plaintiff as "an obsolete and static database" which the United States Department of Labor ("USDOL") has not updated in 30 years and which shows the three jobs identified by the AE as unskilled when a more current database maintained by the USDOL, *i.e.*, "O*NET" lists such jobs as semi-skilled or skilled. *Id.* at 3-11. Defendant argues the ALJ properly considered Plaintiff's subjective complaints and evaluated medical opinion evidence, Defendant's Memorandum at 21-29, and properly addressed Plaintiff's objections regarding the VE's testimony, *id.* at 15-21, such that substantial evidence supports both the ALJ's determinations as to Plaintiff's RFC and the existence of jobs in significant numbers that Plaintiff, given his RFC, can perform in the national economy. *Id.* at 29-30. In reply, Plaintiff argues that more current information regarding the three jobs the VE determine Plaintiff could, given his RFC perform are defined under the USDOL's website, *i.e.*, "O*NET" as semi-skilled or

skilled and, as such, do not accommodate Plaintiff's mental limitations.  Plaintiff's Reply
at 2-7.

## A.    RFC

Plaintiff's objections to the ALJ's assessment of Plaintiff's RFC include that the
ALJ improperly evaluated Plaintiff's subjective complaints and improperly weighed the
medical opinion evidence of Plaintiff's primary care provider, Susan Uebelhoer, PA-C
(certified physician assistant) ("PA Uebelhoer"), treating gastroenterologist James P.
Campion, M.D. ("Dr. Campion"), treating neurologist Maurice Hourihane, M.D. ("Dr.
Hourihane"), and SSA's consultative examiner physician Michael Rosenberg, M.D. ("Dr.
Rosenberg"), Plaintiff's Memorandum at 12-15, which, if properly credited, would
establish Plaintiff is disabled.  *Id.* at 15-26.  The gist of Plaintiff's argument on this point
is that if the medical providers' opinions were properly considered by the ALJ, Plaintiff
would be limited to sedentary work, as opposed to light work,[6] which, pursuant to the

---

[6] Per the relevant regulations,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking and standing is often necessary in
> carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and
> other sedentary criteria are met.

> \* \* \*

> Light work involves lifting no more than 20 points at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or when it involves sitting most of
> the time with some pushing and pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the ability to do substantially all of
> these activities.  If someone can do light work, we determine that he or she can do sedentary
> work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
> long periods of time.

20 C.F.R. § 404.1567(a) and (b).

SSA's Medical Vocational Guidelines or "Grids" would direct a finding of disabled.[7] *Id.* at 16-17. Defendant maintains the ALJ properly evaluated Plaintiff's subjective complaints as well as all medical opinion evidence. Defendant's Memorandum at 21-29. Plaintiff provides no further argument on this point in reply.

### 1. PA-C Uebelhoer

In a Treating Source Statement – Physical Conditions dated November 18, 2016, PA Uebelhoer of Family Medical Health Services, PLLC ("Family Medical"), reported she commenced treating Plaintiff in September 2015 for hypertension, hypothyroidism, and anxiety with which Plaintiff was diagnosed in 2011. AR at 884-87. PA Uebelhoer further reported Plaintiff's symptoms would cause Plaintiff to be "off task" 20% of a work day, to miss more than four days of work a month, that Plaintiff could occasionally lift and rarely carry 10 lbs., sit, stand, and walk for two hours in an eight-hour work day with the option of sitting and standing at will. AR at 884-85. With his dominant right hand and arm, Plaintiff could occasionally reach overhead and in all other directions, handle, finger, feel, push and pull, but could rarely perform these same tasks with his left hand and arm, *id.* at 886, could continuously operate foot controls with his right and left feet, *id.*, occasionally climb stairs and ramps, rarely knee, crawl, or rotate his head and neck, and never climb ladders and scaffolds, balance, stoop or crouch. *Id.* at 886-87. As for environmental limitations, Plaintiff could never work at unprotected heights, occasionally work around moving mechanical parts, extreme cold, or vibrations, frequently work operating a vehicle, around humidity and wetness, and in extreme heat, and was

---

[7] *See* 20 C.F.R. § 404, Subpt. P. App. 2, § 201.14 (providing that an individual who is limited to less than a full range of light work, of Plaintiff's characteristics, including Plaintiff, at age 53, is closely approaching advanced age, with more than a high school education, with skills or semi-skills that are not directly transferable to other work, is disabled).

unlimited in working in areas of dust, odors, fumes and pulmonary irritants. *Id.* at 887.

The ALJ's determination that PA Uebelhoer's Treating Source Statement was entitled to

"little weight," AR at 19-20, was not erroneous.

Preliminarily, as the ALJ conceded, PA Uebelhoer was Plaintiff's primary care

provider, *id.* at 19, yet physician assistants are not considered under the relevant

regulations to be acceptable medical sources, 20 C.F.R. § 404.1502(a)(8),[8] and, as

such, their opinions are not given controlling weight. 20 C.F.R. § 404.1527(f)(1). *See*

*Eusepi v. Colvin*, 595 Fed.Appx. 7, 8-9 (2d Cir. 2014) ("Physicians' assistants are not

'acceptable medical sources' under [20 C.F.R. § 404.1527], but rather are 'other

sources.' While opinions from other sources are properly considered in assessing

claimed disability they need not be given the controlling weight accorded to opinions

from treating medical sources."). Insofar as PA Uebelhoer is Plaintiff's primary care

provider, PA Uebelhoer's treatment of Plaintiff is limited to his hypertension,

hypothyroidism, and anxiety, AR at 885, rendering her assessment of Plaintiff's physical

abilities of less significance, particularly given that in treatment records also dated

November 18, 2016, PA Uebelhoer comments that the Treating Source Statement was

"completed with patient's assistance on what he feels he can do." AR at 1009. PA

Uebelhoer's statement also is inconsistent with statements from other acceptable

medical sources including SSA consultative examiner Dr. Rosenberg who examined

Plaintiff on July 29, 2015, AR at 733-37, and April 14, 2016, AR at 870-74, opining

Plaintiff was restricted from activities involving fine manipulations of the hands

---

[8] The court notes that for claims filed on or after March 27, 2017, a Licensed Physician Assistant is considered an acceptable medical source "for impairments within his or her licensed scope of practice." 20 C.F.R. § 404.1502(a)(8). Because Plaintiff's claim was filed in 2016, PA Uebelhoer does not qualify as an acceptable medical source.

secondary to bilateral tremors, activities involving prolonged standing, sitting, and uninterrupted bending secondary to his mild back and hip pain and significant limited range of motion of his back.  *Id.* at 736, 873.  Accordingly, the ALJ did not err by giving PA Uebelhoer's statement little weight.

### 2. Dr. Hourihane/Dent Neurologic Institute

Plaintiff obtained treatment at Dent Neurologic Institute ("Dent"), located in Buffalo, New York, but after June 20, 2013, Plaintiff did not return to Dent until July 7, 2014, AR 811-14, when Plaintiff saw Nurse Practitioner Lara Besseghini ("NP Besseghini"), and denied any seizures since 2011, but remained on anti-seizure medication.  AR at 813.  Plaintiff was found to be doing well neurologically, without tremors, good arm and leg strength, normal gait and coordination, and normal shoulder strength.  *Id.*  NP Besseghini assessed Plaintiff as neurologically stable, with history of stroke/TBI without residual effects, his anti-seizure medications were continued and Plaintiff was instructed to immediately contact Dent upon the return of any seizure or stroke symptoms.  AR at 813.  When Plaintiff returned to Dent on February 22, 2016, he was examined by NP Besseghini who found Plaintiff stable except for one episode of double vision.  *Id.* at 740-43 (repeated at AR 808-10).

At Plaintiff's next two visits to Dent, he was seen for the first time by Dr. Hourihane who noted Plaintiff was previously followed at Dent by Dr. Dofitas.  AR at 962-64, 959-61. In particular, on October 3, 2016, Plaintiff reported no seizures with anti-seizure medication, but had one episode in 2011 when he was found unconscious with left arm weakness.  AR at 962.  On a neurological frontal assessment battery, Plaintiff scored 17 out of 18.  *Id.* at 964.  Dr. Hourihane assessed Plaintiff was stable

and should continue taking the anti-seizure medication and return in one year, *id.*, but Plaintiff returned on November 30, 2016, reporting that since his last appointment, he had left the stove on, had difficulty with facial recognition, lost function in his left hand, had difficulty typing and speaking, heard music as though the radio was on, frequently smelled hotdogs, fell asleep while sitting in a chair, and was forgetful. *Id.* at 959. Dr. Hourihane was puzzled as to why Plaintiff reported the new symptoms and difficulties with his left hand function unless there was some peripheral compression (nerve entrapment), observing Plaintiff's "right carotid is somewhat smaller on the MRI from February 2006 on the flow void, and requested a new MRI and EMG. *Id.* at 961. In his assessment, Dr. Hourihane attributed Plaintiff's memory difficulties to his TBI and possibly to his seizure disorder and polypharmacy, considered Plaintiff's reported smelling hotdogs to his seizure disorder, and ordered several medical diagnostic studies after which Plaintiff was to return to Dr. Hourihane. *Id.* at 961.

On December 23, 2016, and January 9, 2017, Plaintiff underwent the diagnostic studies ordered by Dr. Hourihane, including magnetic resonance imaging ("MRI") of the brain, AR at 1051, magnetic resonance angiography ("MRA") of the carotids, *id.* at 1052-53, MRA of the head without contrast, *id.* at 1054, electroencephalogram ("EEG") of the brain, *id.* at 1048, and electromyography ("EMG"), of left upper extremity, *id.* at 1049-50. The tests results showed evidence of Plaintiff's cerebral vascular accident in 2011, showing mild neurological disturbances, atrophy and changes in the right temporal lobe but otherwise were largely normal with the left upper extremity EMG "a normal study." *Id.* at 1050.

On February 6, 2017, Plaintiff's treating neurologist Dr. Hourihane completed a Treating Source Statement – Physical Conditions, indicating he had treated Plaintiff every three to six months since 2012, for TBI, seizure, bruit (abnormal sound caused by turbulent blood flow in an artery), and prosopagnosia (neurological condition characterized by an inability to recognize faces). AR at 1041-44. Dr. Hourihane assessed that Plaintiff's symptoms would interfere with the attention and concentration required for performing even simple work-related tasks 10% of the time, and to miss more than four work days per month. *Id.* at 1041. Plaintiff was assessed as "rarely" able to lift or carry less than 10 lbs., and never able to lift or carry more, *id.* at 1042, required the option of sitting and standing at will, *id.*, but in an eight-hour workday could sit for eight hours, stand for five, and walk for two, *id.*, could occasionally reach, handle, finger, feel and push/pull with his dominant right hand, but never with his left, *id.* at 1043, frequently operate foot controls with either foot, *id.*, occasionally climb stairs and ramps, balance, and stoop, rarely kneel, crouch, or rotate head and neck, and never climb ladders and scaffolds or crawl. *Id.* at 1043-44. Plaintiff's environmental limitations were assessed as no exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, or vibrations, rare exposure to extreme cold or heat, and occasionally could operate a vehicle. *Id.* at 1044. The ALJ accorded this opinion "little weight" because it is unsupported, unexplained and inconsistent with Plaintiff's treatment records at least until November 2016 when Plaintiff reported the new symptoms for which Dr. Hourihane then ordered additional diagnostic testing. AR at 20. Plaintiff's argument to the contrary, Plaintiff's Memorandum at 18, the ALJ recognized Dr. Hourihane as Plaintiff's "treating specialist," AR at 14, and

"Dent neurologist." AR at 20. Generally, the opinion of a treating physician is entitled to significant weight, but are not outcome determinative and only entitled to significant weight when "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). Here, although the ALJ noted Plaintiff was examined by Dr. Hourihane only twice prior to rendering his assessment, AR at 20, the ALJ's consideration of Dr. Hourihane's assessment is not limited to the two examinations of Plaintiff, but also includes consideration of the recent diagnostic testing the results of which, *see* AR at 1048-54 (diagnostic testing completed on December 23, 2016 and January 9, 2017 showing evidence of cerebral vascular accident but largely otherwise unremarkable), which do not support Plaintiff's newly asserted symptoms and limitations. This finding by the ALJ is consistent with the fact that in his February 6, 2017 Treating Source Statement, Dr. Hourihane does not identify such testing as supporting his assessment of Plaintiff's ability to perform work-related activities, listing instead only Plaintiff's history of TBI, seizure, bruit, and prosopagnosia, and Plaintiff's self-reported complaints of memory difficulties, loss of left hand function, and seizure. AR at 1042-44. The ALJ also considered that Plaintiff did not seek any neurological care between 2014 and 2016, with Dr. Hourihane only examining Plaintiff twice, including October 2016 when Plaintiff had no new complaints and was assessed as stable, and the next month in November 2016 when Plaintiff newly asserted complaints that were not supported by the follow-up diagnostic testing. *Id.* at 20. The ALJ further commented that Plaintiff reported the new symptoms shortly before the administrative hearing. *Id.* Accordingly, the ALJ did not err in according Dr. Hourihane's opinion little

weight in assessing Plaintiff's alleged disability and thus did not violate the treating physician rule.

### 3. Dr. Campion

The ALJ, contrary to Plaintiff's argument, Plaintiff's Memorandum at 18, recognized Dr. Campion as Plaintiff's treating gastroenterologist, AR at 17, from whom Plaintiff obtained treatment for his Crohn's colitis and chronic reflux since May 17, 2012 when a colonoscopy showed discrete areas of abnormal mucosa suggesting segmental colitis and other areas of fibroses suggestive of prior episodes of colitis, AR at 507, yet biopsies were negative for active inflammatory bowel disease. *Id.* at 509. On January 4, 2016, Plaintiff reported increasing symptoms to Dr. Campion who suggested another colonoscopy, AR at 658, which was performed on January 28, 2016 and showed only "a small amount of diverticulosis" limited to the sigmoid colon, but was otherwise normal with no evidence of active Crohn's disease. *Id.* at 657. On June 28, 2016, Dr. Campion reported Plaintiff was "doing quite well" with improved appetite and mood, with few gastrointestinal symptoms, no dysphagia (swallowing difficulties), odynophagia (painful swallowing), diarrhea, rectal bleeding, or abdominal pain, and only occasional urgency which was improved when Plaintiff avoids caffeine, milk and dairy products. AR at 881. Dr. Campion noted Plaintiff's recent blood work was normal, characterized his Crohn's colitis as "very quiescent disease as of late" with his last colonoscopy unremarkable compared to his first colonoscopy that showed "very minimal disease." *Id.* At that time, Plaintiff took no medication for his colitis and Dr. Campion agreed to "simply watch and see what happens." *Id.* On January 11, 2017, Dr. Campion reported Plaintiff to be "doing fairly well recently" despite remaining off medications. AR at 1032. Plaintiff had

experienced a couple of episodes, lasting from 2-3 days up to one week during which Plaintiff has diarrhea, urgency, and frequency, making it difficult to leave his house, yet his blood work was unremarkable, and Plaintiff preferred to remain off medications, an option with which Dr. Campion agreed given Plaintiff had long periods of time when he was symptom-free. *Id.* Although Plaintiff relies on Dr. Campion's reference to Plaintiff's self-reported severe episodes of Crohn's disease, the symptoms of which can make it difficult for Plaintiff to leave his house, as evidence that Plaintiff cannot work, Plaintiff's Memorandum at 13, there is a complete dearth of clinical findings in the record establishing Plaintiff's Crohn's disease is as severe as Plaintiff alleges. This lack of clinical evidence, combined with Dr. Campion's agreeing to Plaintiff's asserted desire to remain off medication for the Crohn's disease, supports the ALJ's determination that Dr. Campion's statement that Plaintiff found it difficult to leave the house during a flare-up of his Crohn's disease was based on Plaintiff's subjective reporting and was "too vague to be given significant weight. . . ." AR at 20. 20 C.F.R. § 404.1527(d)(2).

Accordingly, the ALJ did not err by giving Dr. Campion's statement little weight in assessing Plaintiff's claimed disability.

### 4. Dr. Rosenberg

In contrast to PA Uebelhoer, Dr. Hourihane, and Dr. Campion, Dr. Rosenberg is not one of Plaintiff's treating sources but, rather, examined Plaintiff twice on a consultative basis in connection with Plaintiff's disability benefits application. *See* AR at 645-49 (July 29, 2015 consultative examination), and 870-74 (April 14, 2016 consultative examination), to which the ALJ gave significant weight. AR at 18-19. Significantly, following both consultative examinations, Dr. Rosenberg diagnosed

Plaintiff with a history of TBI, characterized by bilateral hand tremors, Crohn's disease, mild hip pain, seizure disorder, resolved, and back pain with limited range of motion which in 2015 Dr. Rosenberg attributed to ankylosing spondylitis, but not in 2016, when Dr. Rosenberg also remarked on Plaintiff's limited range of motion in his spine. AR at 648 and 873. Both times Dr. Rosenberg listed Plaintiff's prognosis as stable, and following the April 14, 2016 examination, Dr. Rosenberg assessed Plaintiff with several limitations including restrictions from activities entailing prolonged and uninterrupted bending secondary to his mild back pain and significant limited range of motion of his back, activities requiring fine manipulation of his hands based on bilateral hand tremors, and activities requiring fine voice quality second to mild hoarseness attributed to dysphonia, AR at 672, which restrictions were largely the same as those assessed relative to the July 29, 2015 consultative examination. AR at 648.

Although Dr. Rosenberg is not one of Plaintiff's treating sources, the ALJ observed that Dr. Rosenberg's opinions were based on personal examinations, and the limitations assessed were consistent with Dr. Rosenberg's findings upon such examinations. AR at 18-19. Plaintiff takes issue with Dr. Rosenberg's failure to specify the extent of Plaintiff's assessed limitations particularly with regard to prolonged bending, fine manipulation, and fine voice quality. Plaintiff's Memorandum at 25. Dr. Rosenberg's findings, however, are based on his physical examinations that showed Plaintiff walked with "a very slight limp" favoring his right lower leg, could toe but not heel walk, could squat only 60% limited by leg and back pain, was slightly hoarse, had decrease ROM in his cervical and lumbar spines, ROM of bilateral hips and knees elicits back and right hip pain, lumbosacral spine pain with ROM, and bilaterl hand

tremors.  *Id.* at 871-83.  Despite these abnormalities, Dr. Rosenberg also found Plaintiff

with intact hand and finger dexterity, full ROM bilaterally of hips, knees, ankles, and

shoulders, and normal grip strength bilaterally, no sensory deficit was noted, and

straight leg raising test was negative bilaterally.  *Id.* at 872-83.  Significantly, the ALJ's

hypothetical posed to the VE, *i.e.*, an individual of Plaintiff's age, educational and

vocational background, who could perform light work with occasional balancing,

stooping, kneeling, crouching, crawling, and climbing ramps or stairs, occasional

fingering with the bilateral upper extremities, understand, remember and carry out

simple and routine instructions and tasks, maintain attention and concentration sufficient

for such tasks with customary work breaks, and make simple work-related decisions,

AR at 55-66, was more restrictive than Dr. Rosenberg's assessment.  Insofar as Plaintiff

relies on the assessment of PA Uebelhoer and Dr. Hourihan that Plaintiff could lift and

carry no more than 10 lbs., a weight limitation that would limit Plaintiff, by definition, to

sedentary work, 20 C.F.R. § 404.1567(a), and further, based on the Grids, require a

finding that Plaintiff, in light of his age, education, and skill level is disabled, 20 C.F.R.

§ 404, Subpt. P, App. 2 § 201.14, the record is simply devoid of any evidence

supporting such lifting and carrying restriction.

  The ALJ thus did not err in giving Dr. Rosenberg's consultation opinion significant

weight.  Because Dr. Rosenberg's assessment of Plaintiff's RFC is consistent with the

performance of a limited range of light work, the ALJ did not err of step 4 of the 5-step

sequential evaluation process.

## B. Alternative Employment

As discussed, Discussion, *supra*, at 6-7, the burden switches at step 5 from the plaintiff to the defendant to establish that given the plaintiff's RFC, jobs the plaintiff can perform exist in significant numbers in the national economy. Preliminarily, it is undisputed that the DOT's descriptions of the three jobs the VE identified are compatible for a hypothetical individual with the RFC the ALJ ascribed to Plaintiff. Rather, according to Plaintiff, at step 5, the ALJ can rely only on VE testimony that is based on "up-to-date and 'reliable' job information," AR at 3, that the ALJ failed to adequately address Plaintiff's post-hearing argument on this point, *id.* at 4-6, which objections were outcome-determinative. *Id.* at 6-11. Plaintiff's argument regarding the ALJ's reliance at step 5 on the VE's determination that Plaintiff's RFC permitted Plaintiff to perform the unskilled jobs of gate guard, usher, and locker attendant, which exist in the national economy in sufficient numbers such that Plaintiff is not disabled is premised on the VE's reliance on the DOT, a database which has not been updated in three decades, and that currently the USDOL's preferred database is the Occupational Information Network ("O*NET") where, in contrast to the DOT, all three jobs are described as either semi-skilled or skilled such that the ALJ's concurrence with the VE establishes the ALJ relied on the VE's testimony rather than on the evidence in the record. Plaintiff's Memorandum at 3-11. In opposition, Defendant maintains the ALJ's determination that significant jobs that Plaintiff can perform exist in the national economy is properly based on the VE's testimony at the administrative hearing, Defendant's Memorandum at 15-17, and Plaintiff's objection to the VE's use of the DOT rather than the O*NET website is without merit because relevant Social Security Rulings

specifically instruct the ALJ to primarily look to the DOT for information about job requirements in the national economy. *Id.* at 17-21. In reply, Plaintiff asserts that his position is not that the ALJ is required to rely on the O*NET website, but that Plaintiff was within his rights in questioning the VE's reliance on the DOT given that reliance on the DOT is permitted only insofar as it remains reliable which, as Plaintiff maintains, is arguable given the DOT has not recently been updated. Plaintiff's Reply at 2-7. There is no merit to Plaintiff's arguments at step 5.

In particular, Plaintiff asserts that the ALJ, in violation of SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-6-74(C) ("The claimant and the representative have the right to question the VE fully on any pertinent matter within the VE's area of expertise."), did not permit Plaintiff to challenge the VE's hearing testimony. Plaintiff's Memorandum at 3-6. HALLEX, however, "'is simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner, and therefore . . . a failure to follow HALLEX does not necessarily constitute legal error.'" *Johnson v. Berryhill*, 2018 WL 4275985, at *10 (W.D.N.Y. Sept. 7, 2018) (quoting *Gallo v. Colvin*, 2016 WL 7744444, at * 12 (S.D.N.Y. Dec. 23, 2016), *report and recommendation adopted by*, 2017 WL 151635 (S.D.N.Y. Jan. 12, 2017)). Further, the administrative hearing transcript establishes the ALJ not only permitted Plaintiff to cross-examine the VE, but Plaintiff's attorney did so, specifically inquiring as to how the jobs identified by the VE were performed. AR at 61-65. Nor did Plaintiff object at the administrative hearing that the VE was qualified but, rather, stipulated to the VE's qualifications to testify as a vocational expert. AR at 56. Accordingly, even if failure to

comply with HALLEX § I-2-6-74(C) constitutes legal error, the ALJ's compliance cannot be disputed.

Plaintiff also maintains the ALJ failed to address Plaintiff's objections raised in his post-hearing memorandum that the VE identified jobs, on which the ALJ relied in denying benefits, that are described in the DOT as unskilled, but which as currently performed are either skilled or semi-skilled. Plaintiff's Memorandum at 3-6. A plain review of the ALJ's Decision, however, establishes the ALJ addressed Plaintiff's objections asserted in the post-hearing memorandum, specifically discussing each objection in detail before overruling each objection and denying Plaintiff's request for a new hearing, AR at 22-24, rendering this argument without merit.

Nor was the VE's reliance on the DOT, characterized by Plaintiff as "an obsolete and static database that is no longer being developed or enhanced by the USDOL," Plaintiff's Memorandum at 7, erroneous. Specifically, Social Security Ruling[9] ("SSR") 00-4P provides in pertinent part that

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupations Titles] SCO), for information about the requirements of work in the national economy. [The SSA] use[s] these publications at steps 4 and 5 of the sequential process. When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearing levels, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the

---

[9] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. 402.35(b)(1).

explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4P, 2000 WL 1898704, at * 2.

Not only did the VE's testimony that Plaintiff could, given the hypothetical RFC posed by the ALJ, perform the jobs of gate guard, usher, and locker attendant not conflict with the DOT's description of such jobs, *see* AR at 61-66, but that such jobs are described in the DOT as "unskilled" in contrast to being described as "semi-skilled" or "skilled" on the O*NET website does not require reversal for several reasons. First, the VE's reliance on the DOT, despite not having been updated in more than 25 years, remains "'an accepted basis for vocational opinion according to the Commissioner's rules.'" *Waldvogel v. Comm'r of Soc. Sec.*, 2017 WL 3995590, at * 14 (N.D.N.Y. Sept. 11, 2017) (quoting *Henry v. Colvin*, 2015 WL 9238959, at *7 n. 7 (S.D.N.Y. Dec. 17, 2015)). *See also Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 446 (2d Cir. 2012) ("the DOT is so valued that a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict."); *Valentin v. Berryhill*, 2018 WL 4300119, at * (D.Conn. Sept. 9, 2018) (holding the ALJ did not err at step 5 by relying on job descriptions in the DOT rather than on the O*NET); and *Ryan v. Astrue*, 650 F.Supp.2d 207, 218 (N.D.N.Y. 2009) ("Even if the VE's testimony was in conflict with O'Net [*sic*], there is no requirement that the VE's testimony comply with that database. Instead, the VE's testimony must comply with the DOT."). Plaintiff also does not point to any caselaw from within the Second Circuit holding the VE's reliance on the DOT's job descriptions is improper. Nor does Plaintiff reference any authority calling into doubt the accuracy of job descriptions contained in the DOT as compared to those contained in the O*NET but, rather, baldly concludes that because the DOT's job

23

descriptions have not been updated since 1991, they must be less accurate than those found on the O*NET database. In any event, unlike the DOT, O*NET does not appear in the Social Security Rulings as an approved source nor one with which the VE's testimony must be consistent. *See Allen ex rel. Allen v. Comm'r of Soc. Sec.*, 2017 WL 6001830, at * 7 *N.D.N.Y. Dec. 4, 2017) (finding the plaintiff's argument that "the DOT is outdated and not an accurate representation of occupations in today's world [ ] interesting but must fail," because 20 C.F.R. § 419.966(d)(1) provides "an ALJ may take administrative notice of job data from 'various governmental and other publications' including the DOT."); *see also* SSR 00-4P, 2000 WL 1898704, at * 2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO), for information about the requirements of work in the national economy."). The evidence in the record also is clear that the VE is a certified rehabilitation counselor, with a master's degree in rehabilitation counseling, a field in which the VE has worked for 39 years, AR at 378-79, and the VE made clear at the administrative hearing that her testimony was not in conflict with the DOT, AR at 65-66, and that she also relied on Job Browser Pro software by SkillTRAN, a comprehensive information database used by vocational counselors, in arriving at the number of each of the three jobs available in the national economy. AR at 62-63.

Accordingly, substantial evidence in the record supports the ALJ's reliance on the VE's testimony regarding that jobs exist in substantial numbers in the national economy that can be performed by Plaintiff in light of his RFC. The ALJ thus met her burden at step 5.

**<u>CONCLUSION</u>**

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is DENIED; Defendant's

Motion (Dkt. 17) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May <u>13</u>, 2019
                  Buffalo, New York